IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DORIAN WILLIAMS,

          Plaintiff,

v.

MARK KARTMAN, MARY MCCULLICK,
ANDREW HULCE, ASHLEY DRONE,
DARYL FLANNERY, HEIDI BLOYER, and
CODY SAYLOR,[1]

          Defendants.

OPINION AND ORDER

19-cv-118-slc

*Pro se* plaintiff Dorian Williams, presently incarcerated at the Green Bay Correctional Institution, has been granted leave to proceed in this § 1983 suit on Eighth Amendment claims against various employees at the Wisconsin Secure Program Facility ("WSPF") for allegedly ignoring his kidney stone pain on three dates in July and August 2018 when Williams was a prisoner at that institution.[2] The case is before the court on defendants' motion for summary judgment. Dkt. 36. Because Williams has not adduced facts that would allow a reasonable jury to conclude that any of the defendants acted with deliberate indifference in addressing Williams' pain, I am granting the motion in its entirety, entering judgment, and closing this case.

I will start with an observation about the facts: although Williams purports to "dispute" some of defendants' proposed facts, in most instances he has failed to cite to admissible evidence that would create a genuine dispute. For example, his objection that defendants did not support certain

---

[1] I have amended the caption to reflect the proper spelling of defendants' names as provided in defendants' submissions, and I direct the clerk to do the same.

[2] I also had granted Williams leave to proceed against defendant Saylor on a First Amendment retaliation claim, but on September 11, 2020 I dismissed all of Williams's claims against Saylor on exhaustion grounds. *See* dkt. 34.

proposed facts with corroborating documents[3] is unfounded. A party's sworn declaration constitutes admissible evidence so long as it rests on a sufficient foundation, such as the that party's personal knowledge. Accordingly, where Williams disputed an otherwise properly supported fact solely on this ground, I have deemed the fact undisputed. Similarly, insofar as *Williams* has proposed facts without citing to admissible evidence or supplying a foundation,[4] I have disregarded these proposed facts. That said, I find the following facts to be undisputed and material:

## UNDISPUTED FACTS

### I. Parties

Williams was confined and defendants were employed at WSPF at all relevant times. Mark Kartman was Security Director, Daryl Flannery was a captain, Andrew Hulce was a lieutenant, Mary McCullick and Heidi Bloyer were sergeants, and Ashley Drone was a registered nurse.

Williams' Eighth Amendment claims relate to three dates on which he experienced pain related to kidney stones.

### II. July 28, 2018 (Defendants McCullick, Hulce, Bloyer and Drone)

On July 28, 2018, at 4:22 a.m.,[5] Williams contacted the unit sergeant, McCullick, and told her that he had severe pain in his abdomen. McCullick immediately contacted her supervisor, Lieutenant Hulce, who in turn contacted the on-call HSU nurse, RN Beckey Kramer, and told her

---

[3] *See, e.g.* Response to PPFOF Nos. 3-5.

[4] *See, e.g.*, Response to PPFOF No. 2, 11, 16.

[5] Although Williams asserts that he pushed his emergency call button at 3 a.m., he has not supported this assertion with admissible evidence. *See* Plt.'s PPFOF, dkt. 60, ¶ 2. In his declaration, he does not specify what time he contacted McCullick. *See* Plt.'s Dec., dkt. 64, ¶ 4. The unit logbook, however, reflects that McCullick received the call at 4:22 a.m. Dkt. 40-1, at 2.

that Williams was having lower left abdominal pain. Hulce personally visited Williams at his cell door at 5:00 a.m. and told Williams that he would "notify someone." Neither McCullick nor Hulce had any further interaction with Williams on that date: Hulce's shift ended at 5:30 a.m. and McCullick's ended at 6:00 a.m.

A nurse was on Williams' unit for a medication pass at 6:21 a.m. [The parties dispute who this nurse was and whether she saw Williams. Williams avers that RN Drone was on the unit for medication rounds. He further avers that Drone saw him on his cell floor, curled up and crying in extreme pain, after which Drone said that she would notify someone. Plt.'s PPFOF, dkt. 63, ¶ 7. However, the unit log indicates that non-defendant RN Kramer, not Drone, did the medication round on Williams' unit at 6:21 a.m. *See* Exh. 1006-1 (dkt. 40-1), at 2.[6]]

At 7:47 a.m., Williams contacted defendant Bloyer, who immediately contacted defendant Drone, a registered nurse in the HSU. About 45 minutes later, at 8:28 a.m., plaintiff was taken to the HSU, where he was seen by non-defendant Kramer, a registered nurse. Kramer noted plaintiff's lower left back pain and notified the on-call doctor, who ordered a 30 mg injection of Toradol and 1000mg of acetaminophen. Kramer carried out the doctor's orders and scheduled Williams for a follow-up later that same morning.

At 11:31 a.m., Williams was taken to the HSU for his follow-up, where he was seen by Drone. Drone noted his symptoms, notified the on-call doctor, and carried out the doctor's orders

---

[6] This dispute over the nurse's identity is immaterial: Williams does not allege or argue that Drone ignored his pain complaints when she allegedly observed him in his cell; instead, he proffers this evidence to show that it was Drone, not Hulce, who said she would "notify someone." *See* Plt.'s Br., dkt. 59, at 4 ("Drone requested that plaintiff be seen not Hulce."). It is undisputed that Williams was seen in the HSU about two hours later, where his pain was evaluated and treated with strong pain medication, and again later that morning, when Drone evaluated him and provided him with additional pain medication. As discussed below, these facts refute Williams' allegation that defendants were deliberately indifferent to his pain.

for two tablets of Tylenol #3. Drone told Williams to notify the HSU if his pain did not improve. Williams returned to his cell at 11:51 a.m.

Around 11 p.m., Williams was taken off site to the Boscobel emergency department, where he was diagnosed with a kidney stone.

### III. August 9, 2018 (McCullick and Flannery)

On August 9, 2018, Williams contacted McCullick at 1:25 a.m., reporting pain from his kidney stones. McCullick immediately contacted defendant Flannery, who arrived on the unit within five minutes to see Williams at his cell front. McCullick had no further interaction with Williams.

Flannery spoke with Williams, who complained only that his pain was making it difficult for him to sleep. Flannery determined that Williams' pain did not present an emergency, so Flannery did not contact the on-call nurse. Staff provided ibuprofen to Williams at 3:30 a.m..

At 4:48 a.m., Flannery sent an email to the nurses who would be working that morning, as well as to the HSU Manager and several others, explaining that Williams had reported that his kidney stones were causing pain severe enough to prevent him from sleeping, but he had been walking around in his cell and was not urinating blood, sweating profusely, or buckled over. Flannery requested that Williams be seen first thing in the morning. Williams was seen in the HSU at 8:29 a.m. by nurses Anderson and Waterman and Dr. Patterson.

On August 14, 2018, Williams filed an inmate complaint, alleging that prison staff had delayed him medical treatment for his pain. The Institution Complaint Examiner ("ICE") affirmed Williams' complaint, noting that under prison policy, the on-call nurse should have been contacted right away. The ICE forwarded a copy of the recommendation to defendant Kartman, the security director, for "follow-up as appropriate."

**IV. August 19, 2018 (Bloyer)**

On August 19, 2018, at 7:02 a.m., Williams informed Bloyer that he was having kidney stone pain. Bloyer immediately contacted the HSU and told Williams that he would be taken to the HSU to be seen shortly. Williams was seen in the HSU at 9:14 a.m.

OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" in order to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406–407 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (brackets omitted). At summary judgment, disputed facts are viewed in a light most favorable to the plaintiff as the non-moving party. This is not true for inferences supported merely by speculation or conjecture. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017); *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 345 (7th Cir. 2019).

**I. Eighth Amendment**

The Eighth Amendment gives prisoners the right to receive adequate medical care. *Estelle v. Gamble*, 429 U.S. 97 (1976). To prevail on a claim of constitutionally inadequate medical care, an inmate must demonstrate two elements: (1) an objectively serious medical condition and (2) a state official who was deliberately (that is, subjectively) indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). For purposes of summary judgment, defendants do not dispute that Williams' kidney stone-related pain constituted a serious

5

medical need; instead, they seek judgment on the ground that no reasonable trier of fact could find defendants' handling of his pain constituted deliberate indifference.[7]

"Deliberate indifference" means that the official was aware the prisoner faced a substantial risk of serious harm but disregarded that risk consciously by failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). To meet a deliberate indifference threshold, a plaintiff must prove more than negligent, or even grossly negligent acts, although something less than purposeful acts. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). This threshold is met by evidence that: (1) "the official knows of and disregards an excessive risk to inmate health or safety"; or (2) "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and he or she draws that inference yet consciously chooses not to take reasonable steps to avoid it. *Id*. at 837.

Williams acknowledges that defendants took steps to address his pain, but he contends that they took too long to do so. More specifically, he argues that the security officers took too long to relay his complaints to medical personnel, and that the medical treatment provider (Nurse Drone) took too long to send him to the emergency room. Delayed care may violate the Eighth Amendment if the alleged delay serves no legitimate penological purpose and caused the inmate's condition to worsen or unnecessarily prolonged his pain. *See Estelle*, 429 U.S. at 104-05; *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Petties v. Carter*, 836 F.3d 722, 730-31 (7th Cir. 2016) (holding that inexplicable delay in medical treatment for a prisoner, which serves no penological interest, can support an inference of deliberate indifference, as element for a prisoner's Eighth Amendment claim); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (guards could be liable under the Eighth Amendment for delaying treatment of broken nose for a day and half); *Edwards v. Snyder*, 478 F.3d

---

[7] Defendants also raise qualified immunity as a ground for relief. The court need not reach that issue since the record does not support finding a constitutional violation as a matter of law.

6

827, 830-31 (7th Cir. 2007) (a plaintiff who painfully dislocated his finger and was needlessly denied treatment for two days stated a claim for deliberate indifference). Williams has not adduced evidence from which a reasonable jury could make this finding with respect to any of the defendants.

### A. Sergeant McCullick

Williams asserts that McCullick didn't contact anyone "for hours" after receiving Williams' calls on July 28 and August 9, 2018. This assertion is unfounded. The undisputed facts show that McCullick responded to Williams' calls immediately by reporting Williams' pain complaints to her supervisors, Hulce and Flannery, respectively, who then visited Williams at his cell and contacted the HSU. No reasonable jury could find deliberate indifference by McCullick on these facts, so judgment must be entered in her favor.

### B. Sergeant Bloyer

Sergeant Bloyer immediately contacted the HSU on the two occasions she received a call from Williams stating that he was in pain. Williams asserts only that Bloyer made rude comments to him when she received his calls and complained that she had a lot of other inmates to deal with. In an Eighth Amendment case, the relevant question is not "whether [defendant] acted in an impolite manner towards plaintiff, but whether her treatment decisions exhibited a complete abandonment of professional care." *Franklin v. Hannula*, No. 17-CV-562-WMC, 2018 WL 9149281, at *4 (W.D. Wis. Mar. 22, 2018) (citing *Duckworth v. Ahmad*, 532 F.3d 675, 679-80 (7th Cir. 2008)). Williams has adduced no evidence to refute defendants' evidence showing that Bloyer called HSU immediately after receiving Williams' calls, and that he was seen in the HSU shortly after she did so. Accordingly, his Eighth Amendment claim against Bloyer must be dismissed.

### C.  Lieutenant Hulce

Hulce interacted with Williams on July 28, 2018. After learning from McCullick that Williams was having abdominal pain, Hulce relayed Williams' complaint to the on-call HSU nurse and personally spoke to Williams at his cell door. Williams does not suggest what else Hulce should have done, nor has he proposed any facts from which a jury could find that Hulce knew of an excessive risk to Williams' health yet failed to take corrective action. As non-medical personnel, Hulce was entitled to defer questions about Williams' treatment to the judgment of medical professionals, so long as he did not simply "ignore" Williams' pain. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Hulce did not ignore Williams' pain; to the contrary, he forwarded Williams' concerns to the appropriate health professionals. Insofar as Williams was not seen in the HSU immediately, nothing in the record suggests that Hulce, whose shift ended shortly after he spoke with Williams, had anything to do with that delay. Accordingly, judgment will be entered in Hulce's favor.

### D.  Captain Flannery

Citing to the ICE's affirmance of his grievance, Williams faults Flannery for failing to contact the on-call HSU nurse after Flannery was notified that Williams was having abdominal pain in the early morning hours of August 9. However, "ignoring internal prison procedures does not mean that a constitutional violation has occurred." *Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir. 1996). It is undisputed that Flannery checked on Williams, who reported only that his pain was keeping him awake but otherwise did not claim to need immediate care. It is further undisputed that Flannery emailed the HSU and requested that Williams be seen first thing in the morning, and that Williams was in fact seen in the HSU at approximately 8:30 a.m. Finally, Williams was provided

8

with ibuprofen in the interim. No reasonable jury could find from these facts that Flannery knew of a substantial risk to Williams but consciously disregarded it. At the very most, Flannery may have been negligent, but inadvertent error, negligence, gross negligence or even ordinary malpractice do not violate the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996); *see also Snipes*, 95 F.3d at 590-91. Accordingly, Williams' claim against Flannery must be dismissed.

### E. Registered Nurse Drone

Nurse Drone treated Williams during his follow-up visit to the HSU on July 28. Williams does not dispute that Drone carried out the on-call doctor's orders to provide Williams with two Tylenol #3 tablets and to advise him to contact the HSU if his symptoms did not improve. Williams suggests that he should have been sent to the Boscobel emergency room sooner than he was. Williams has adduced no evidence to show that Drone was authorized to make that decision, much less that she knew that failing to do so put Williams at a substantial risk of harm. Absent such evidence or any other evidence to suggest that Drone ignored a substantial risk of harm to Williams, his claim against Drone must be dismissed.

### F. Security Director Kartman

I allowed Williams to proceed on a claim that Kartman failed to instruct security staff – specifically, defendant Saylor – to alert medical staff when Williams complained about his kidney stones, after Kartman was made aware of the August 9 incident when he received a copy of Williams' inmate complaint on or after August 23. *See* Op. and Ord., dkt. 17, at 6. Defendants argue that this claim is no longer actionable because the claims against Saylor were dismissed. This argument is unpersuasive because the claims against Saylor were dismissed simply for failure to exhaust, *see* dkt.

34. But Kartman is entitled to summary judgment because the claim against him is meritless. Williams has not proffered a single fact or adduced any evidence tending to show that: (1) Kartman failed to instruct staff as Williams alleged in his complaint; (2) Kartman's alleged omission resulted in any harm or unnecessary pain to Williams; or (3) Kartman acted with deliberate indifference. Moreover, Williams does not develop any argument concerning this claim in his brief. Accordingly, Williams' claim against Kartman will be dismissed.

## II. Conclusion

At the summary judgment stage, it is not enough for a plaintiff to state his subjective belief that defendants "ignored" his pain complaints; rather, he must present "definite, competent evidence" from which a jury could infer deliberate indifference. *See Vukadinovich v. Bd. of Sch. Trustees of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citation omitted). That evidence is lacking here. The undisputed evidence shows that the non-medical defendants took Williams' pain complaints seriously and promptly notified either supervisory or medical staff of his concerns, and that Nurse Drone, the only medical defendant, evaluated Williams's pain and provided pain medication in accordance with the instructions she had received from the on-call physician. Accordingly, Williams' Eighth Amendment claims against the defendants must be dismissed.

## ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment (dkt. 36) is GRANTED. Plaintiff Dorian Williams's deliberate indifference claims against defendants McCullick, Bloyer, Hulce, Flannery, Drone, and Kartman are DISMISSED WITH PREJUDICE.

2. Williams's claims against defendant Saylor are DISMISSED WITHOUT PREJUDICE for his failure to exhaust his administrative remedies.

3. Defendants' motion to modify the schedule (dkt. 65) is DENIED as moot.

4. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 26th day of July, 2021.

BY THE COURT:

/s/

_____

STEPHEN L. CROCKER
Magistrate Judge